UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-mc-20762-ALTMAN/REID

CITGO PETROLEUM CORP.,

    Petitioner,

v.

PETROLEUM LOGISTICS SERVICE USA, INC.,

    Respondent.
_____/

## REPORT AND RECOMMENDATION ON PETITIONER'S MOTION FOR ATTORNEYS' FEES AND COSTS

This matter arises from a lawsuit pending in the United States District Court in the Southern District of Texas in which CITGO Petroleum Corporation's ("CITGO") has sued Panama-based Petroleum Logistics Service Corp. ("PLS") for fraud and Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, among other claims. *CITGO Petroleum Corp. v. Petroleum Logistics Service Corp.*, No. 4:20-cv-01820 (S.D. Tex. Oct. 13, 2021) ("Underlying Action"). Here, CITGO sought discovery from Petroleum Logistics Service USA, Inc. ("PLS USA"), a Miami-based subsidiary of PLS pursuant to a non-party subpoena for deposition and document production, which was approved by the Texas Court. [ECF No. 1]. When PLS USA failed to comply with the non-party subpoena, this Court granted CITGO's Motion to Compel ordering PLS USA to designate a corporate representative to appear for deposition and promptly coordinate a date for the deposition to take place. [ECF No. 11]. The Order authorized CITGO to seek compensation in the form of reasonable attorneys' fees for PLS USA's failure to comply with the subpoena. [*Id.*].

1

CITGO now seeks an order holding Respondent Petroleum Logistics Service USA, Inc. ("PLS USA") and Miami attorney, Mr. Peter A. Gonzalez, jointly and severally responsible for a total of $36,296.90 in attorneys' fees and costs incurred in pursuing compliance with the non-party subpoena. [*Id.* at 13]. After careful consideration of the Motion, it is **RECOMMENDED** that CITGO's Motion for Expenses be **GRANTED in part and DENIED in part.**

## BACKGROUND

### I.     The Underlying Action

According to CITGO, PLS, a Panama-based company, and Jose Manuel Gonzalez Testino, who indirectly owns PLS, agreed to provide CITGO with logistics services and procurement of international equipment, in exchange for a commission on all purchases made on CITGO's behalf. [ECF No. 11 at 2]. CITGO learned, however, that Testino was purchasing the equipment and providing the services from companies he directly owned, on behalf of companies he indirectly owned, through lucrative purchasing contracts. [*Id.*]. These contracts were secured in exchange for bribes paid to CITGO's employees who "improperly inflated" the value of the goods and services paid for. [*Id.*]. On May 29, 2019, Testino pled guilty to a bribery and money laundering scheme dating back to 2012. [ECF No. 1-1 at 4].

On May 26, 2020, CITGO's counsel, Willkie Farr & Gallagher LLP ("Willkie") of Washington D.C., filed the Underlying Action to recover damages from PLS and Testino. [ECF No. 11]. When PLS and Testino failed to timely respond, Willkie requested an entry of default, which was then granted and entered by the Clerk. [*Id.*].

### II.     Events Giving Rise to CITGO's Motion to Compel

On August 25, 2021, CITGO filed a Motion for Leave to Conduct Third-Party Discovery on PLS USA, PLS's United States subsidiary. [*Id.*]. CITGO's Motion was granted, and on

November 8, 2021, CITGO served Sergio Omana, PLS USA's registered agent, with a subpoena seeking evidence necessary to calculate damages due in the Underlying Action. [*Id.* at 3]. Specifically, the subpoena requested PLS USA produce documents and designate a corporate representative to be deposed. [*Id.* at 5]. According to Counsel for CITGO, on December 1, 2021, Mr. Peter A. Gonzalez, a Miami-based attorney at the SMGQ law firm called Willkie to inform them that he represented PLS USA in relation to the subpoena [ECF No. 1-1 at 3]. However, in emails attached to CITGO's Motion to Compel, on that same date, in response to CITGO's requests to coordinate deposition dates, Mr. Gonzalez' legal assistant informed CITGO's counsel that "Mr. Gonzalez has been retained by Javier Aurrecoechea and Petroleum Logistics Service Corp." [ECF No. 1-1 at 17]. The email makes no representations regarding the related entity PLS USA. In any event, Mr. Gonzalez's legal assistant requested to reschedule the deposition, to which CITGO agreed. [*Id.*; ECF No. 11 at 5]. A week later, Mr. Gonzalez again stated that he "would be representing Javier Aurrecoechea and Petroleum Logistics Service Corp., and Mr. Omana as its corporate representative, if he is in fact the corporate rep…. [and] I will be representing these folks in connection with the subpoenas they received." [ECF No. 1-1 at 16]. CITGO contends, however, Mr. Gonzalez evaded subsequent attempts to confer. [ECF No. 11 at 5].

On January 18, 2022, CITGO re-served PLS USA by leaving the subpoena at the address of the corporate registered agent Sergio Omana in Miami. The subpoena was identical to the prior document, but on this occasion included a check for deposition fees. [*Id.*]. The subpoena, served on PLS USA "ordered the [deposition] and production of documents to take place by February 7, 2022, at the office of the law firm Jones Day [local counsel] at 600 Brickell Ave, Miami, FL 33131." [*Id.* at 5–6]. PLS USA never objected to or moved to quash the subpoena. [ECF No. 11 at 8]. Instead, on February 7, 2022, Mr. Gonzalez contacted CITGO's counsel and informed him that

3

Omana had just sent him the January 18, 2022, subpoena, and that there would be no need for CITGO to "file any motion to compel in this matter because PLS USA does intend to appear for deposition, and to produce documents it may have in its possession or control that is responsive to the subpoena, subject to any objection it may have to the documents request." [ECF No. 1-1 at 11–12]. Mr. Gonzalez further indicated that he would be willing to meet and confer for the purposes of setting a date for the rescheduled deposition. [*Id.*]. After several months of failed efforts, however, Willkie prepared the underlying Motion to Compel. [ECF No. 11 at 8]. Jones Day, CITGO's locally appointed counsel, assisted Willkie with submission of two *pro hac vice* applications and preparation of the Motion to Compel within the Southern District of Florida.

On April 12, 2022, [ECF No. 13-13 at 4], the Court granted CITGO's Motion to Compel, and permitted "leave to file a motion pursuant to Local Rule 7.3 seeking reasonable expenses incurred in bringing the Motion to Compel." [ECF No. 12 at 2].

**III.    CITGO's Motion for Attorneys' Fees**

On June 13, 2022, CITGO filed the instant verified Motion for Attorneys' Fees. [ECF No. 13-13]. CITGO's Motion was referred to the Undersigned pursuant to 28 U.S.C. § 636 by the Honorable Roy K. Altman, for a Report and Recommendation. [ECF No. 15]. On October 11, 2022, the Undersigned issued an Order to Show Cause directing PLS USA and Mr. Gonzalez to explain why the instant Motion for Attorneys' Fees and Costs (and a later filed Motion for Contempt [ECF No. 18]) should not be granted. *See* [ECF No. 21]. Additionally, on October 27, 2022, out of an abundance of caution, this Court entered an Amended Order to Show Cause instructing the Clerk of Court to mail a copy of the Amended Order to Show Cause to PLS USA at its corporate address and to Mr. Gonzalez by both email and mail. [ECF No. 22]. Further, the Undersigned ordered CITGO's counsel to serve copies of the Amended Order to Show Cause on

PLS USA and Mr. Gonzalez and to file a Notice of Compliance once it had done so. [*Id.*]. CITGO filed its Notice of Compliance on October 31, 2022. [ECF No. 24]. PLS USA and Mr. Gonzalez had until November 6, 2022, to respond to the Amended Order to Show Cause. [*Id.*]. No response was filed.

## DISCUSSION

### I. ENTITLEMENT TO FEES

Under Federal Rule of Civil Procedure 45, a movant seeking discovery may depose a nonparty organization named within a subpoena. Under Rule 30(b)(6), the subpoena must describe, with reasonable particularity, matters for examination and the named organization's duty to confer in good faith. Following service, the named organization must designate one or more persons to testify on its behalf, who can clearly provide information known or reasonably available. Fed. R. Civ. P. Rule 30(b)(6). If the nonparty "corporation or other entity fails to make a designation under Rule 30(b)(6)," and the movant successfully moves to compel said organization under Rule 37(a)(3)(B)(ii), then the court *must* require reimbursement of any reasonable costs incurred as a result. Fed. R. Civ. P. 37(a)(5)(A). Additionally, under Rule 37(a)(5)(A) states that "[i]f the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conducted necessitated the motion, the party *or* attorney advising that conduct, *or both* to pay the movant's reasonable expenses incurred." *See* Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

Further, under Southern District of Florida Local Rule 7.3(b), the moving party is required to serve a draft motion for reasonable expenses on the opposing pasty at least thirty days prior to the filing deadline. S.D. Fla. Local Rule 7.3(b). Within twenty-one days of service, the parties must meet and confer to discuss total attorneys' fees and costs to be awarded, limited to those

permitted under 28 U.S.C. § 1920. *Id.* Accordingly, both parties must reasonably "cooperate and act in good faith in attempting to resolve the dispute." S.D. Fla. Local Rule 7.1(a)(3)(B). "Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." *Id.*

Here, CITGO is entitled to reimbursement of reasonable expenses incurred in filing the underlying Motion to Compel. PLS USA ignored a subpoena issued from the Southern District of Texas, seeking discovery in the Underlying Action. After PLS USA rebuffed all of CITGO's attempts to confer, the Court granted the underlying Motion to Compel. [ECF No. 11]. Failure to make a reasonable, good faith effort to cooperate is sufficient cause for the Court to require PLS USA to reimburse CITGO for incurred attorneys' fees and costs. *Top Branch Env't Servs., Inc. v. Hoodridge Unlimited, Inc.*, No. 08-60767-CIV, 2009 WL 10667563, at *2 (S.D. Fla. Jan. 16, 2009) (noting the defendant would not be required to pay the plaintiff's reasonable attorneys' fees had they conferred prior to the plaintiff filing its fees motion).

Additionally, CITGO made further efforts to confer regarding the amount of attorneys' fees and associated costs to be awarded. On May 4, 2022, CITGO emailed Mr. Gonzalez to notify him of its intent to seek fees. [*Id.*]. CITGO claimed it served Mr. Gonzalez with a draft of the instant Motion, delivered by mail on May 16, 2022. [ECF No. 13-1 at 6]. CITGO also contacted Mr. Gonzalez's office by either email or telephone on May 17, May 24, May 26, June 2, and June 6, regarding its intent to pursue an order to compel and fees. [*Id.*]. PLS USA remained unresponsive, thereby providing the Court two equally sufficient bases to award CITGO reasonable attorneys' fees and costs.

## II. ATTORNEYS' FEES TO BE AWARDED TO CITGO

CITGO has requested attorneys' fees in the amount of $35,823.16 for moving to compel PLS USA's compliance with subpoena. For the reasons explained below, a downward adjustment is warranted.

### A. The "Lodestar Method"

Although PLS USA has filed no objections to CITGO's fee application, the Court is still obligated to review the amount requested for reasonableness. *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

Within the Eleventh Circuit, courts determine a reasonable award for attorneys' fees using the "Lodestar" Method (the "lodestar"), through which courts calculate reasonable fees by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 427 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Accordingly, the movant must supply the court with specific time records, which detail the general nature of each enumerated time expenditure and organized by activity or stage of the case. *Barnes*, 168 F.3d at 427.

### B. Reasonable Hourly Rate

First, under the lodestar, the court must compare each timekeeper's proposed hourly rate to "prevailing market rate[s] in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436. The "relevant legal community" is the local area where the case or motion was filed. *Id.* at 437. The Eleventh Circuit has stated, "[w]e have never held that it is reasonable to award non-local attorneys' rates when competent local counsel was willing and able to handle the fee-applicant's claims." *Id.* Accordingly, a movant bears the burden of providing "satisfactory evidence" to justify the

7

requested rates within the local market. *Barnes*, 168 F.3d at 427 (citing *Norman v Housing Auth. Of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). The party requesting fees must "provide the identity, experience, and qualifications" of each attorney, S.D. Fla. Local Rule 7.3(a)(5)(A), and must disclose the standard hourly rates normally billed by counsel. S.D. Fla. Local Rule 7.3(a)(4).

To recover non-local hourly rates, the attorney for whom fees are sought must provide proof of an exceptional circumstance. *Barnes*, 168 F.3d at 437. In making an adjustment, the court may choose to consider twelve prescribed factors, in addition to the lodestar: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing factors from *Johnson v. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

"Where the rates charged by the fee-seeking party are higher than the rates charged by comparable attorneys and law firms in the relevant district, fee applicants may voluntarily reduce the amount of fees they claim." [ECF No. 13-13 at 7] (citing *Procaps S.A. v. Patheon, Inc.*, No. 12-24356-CIV, 2013 WL 6238647, at *17 (S.D. Fla. Dec. 3, 2013)). In the end, the court is deemed an expert on the issue of hourly rates and "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

Here, CITGO lists a total of eight compensable timekeepers from both Willkie and Jones Day, local counsel, in its request for attorneys' fees. With respect to its arrangement with Willkie, CITGO asserts the rate normally billed by counsel already includes a "significant" discount from the firm's standard hourly rates. In addition to this pre-arranged discount, CITGO asks to recover 75% of counsels' hourly rates. [ECF No. 13-13 at 9]. With respect to arrangements with Jones Day, CITGO avers that its requested hourly rates are also "significantly discounted." [*Id.*]. CITGO suggests this voluntary reduction of hourly rates should grant it clemency from a further downward adjustment by the Court. [*Id.* at 7]. Indeed, these lawyers are very competent, experienced, and clearly notably accomplished. Notwithstanding, the proposed hourly rates are still considerably higher than rates charged by similarly experienced lawyers in this legal community and appear excessive in light of the nature of the work involved.

CITGO has provided the following information to assist the Court in determining the reasonableness of the hourly rates charged:

Mr. Michael J. Gottlieb ("Mr. Gottlieb"), is a 2003 Harvard Law School graduate and a Partner in the Litigation Department at Willkie, in Washington, D.C. [ECF No. 13-1 at 77]. CITGO requests Mr. Gottlieb receive an hourly rate of $988.13 per hour. [ECF No. 13-13 at 12]. Mr. Gottlieb is a member of the New York Bar and the District of Columbia Bar. [ECF No. 13-1 at 77]. He served as a Law Clerk for Justice John Paul Stevens on the United States Supreme Court, and as a Law Clerk for the Ninth Circuit Court of Appeals. [*Id.* at 79]. Mr. Gottlieb has nearly twenty years of experience, [ECF No. 13-13 at 8], he was an Associate Counsel-member to President Barrack Obama, a Deputy Director of the international civil-military task force in Afghanistan, an Assistant U.S. Attorney for the Central District of California, and a staffer on the U.S. Senate Judiciary Committee. [*Id.*].

Mr. Robert J. Meyer ("Mr. Meyer"), is a 1985 University of Virginia School of Law graduate and a Partner in Willkie's Litigation Department. [ECF No. 13-1 at 80]. CITGO requests he be compensated at an hourly rate of $1,147.50 per hour. [ECF No. 13-13 at 12]. Mr. Meyer is a member of the District of Columbia Bar. [ECF No. 13-1 at 80]. In his approximately thirty-five years of practice, [ECF No. 13-13 at 8], Mr. Meyer served as a Law Clerk for the U.S. Court of Appeals for the District of Columbia Circuit, [ECF No. 13-1 at 81], served in the U.S. Department of Justice's Public Integrity Section, and was an Assistant U.S. Attorney for the District of Columbia. [*Id.*].

Mr. Nicolas Reddick ("Mr. Reddick"), is a 2012 University of Michigan Law School graduate and a Partner in Willkie's Litigation Department in both San Francisco and Washington, D.C. [ECF No. 13-1 at 82]. CITGO requests he be compensated at a rate of $796.88 per hour. [ECF No. 13-13 at 12]. Mr. Reddick is a member of the District of Columbia and California Bar. [ECF No. 13-1 at 82]. In his approximately ten years of experience, Mr. Reddick practiced in the U.S. Department of Justice as a prosecutor and as a Judge Advocate General for the U.S. Navy. [*Id.*].

Mr. Ricardo H. Puente ("Mr. Puente"), is a 1996 Loyola University Law School graduate, and a partner at Jones Day in Miami, FL, [ECF No. 13-1 at 88]. CITGO requests reimbursement at a rate of $935.00 per hour. [ECF No. 13-13 at 12]. Mr. Puente is a member of the Florida Bar. He is admitted to practice and has practiced within the Supreme Court of the United States. [ECF No. 13-1 at 88]. Mr. Puente is a Board-Certified International Litigation and Arbitration Lawyer with a focus in cross-border trials and international arbitration tribunals in high-stake cases. [*Id.*].

Mr. Andrew English ("Mr. English"), is a 2013 Harvard Law School graduate and an Associate in Willkie's Litigation Department in Washington, D.C. [ECF No. 13-1 at 85]. CITGO

requests he be compensated at an hourly rate of $758.63 per hour. [ECF No. 13-13 at 12]. Mr. English is a member of the District of Columbia, the New York, and Massachusetts Bar. [*Id.*].

Ms. Amy G. Fudenberg ("Ms. Fudenberg"), graduated from Tulane University School of Law Magna Cum Laude in 2018, [ECF No. 13-1 at 89]. She has been a member of Jones Day's Litigation Department since 2021. [*Id.*]. CITGO requests reimbursement at a rate of $531.25 per hour. [ECF No. 13-13 at 12]. Ms. Fudenberg is a member of the Florida Bar. [ECF No. 13-13 at 9].

Mr. Douglas J. Kelly ("Mr. Kelly"), is a former Law Clerk for Willkie, and recent graduate from the New York University School of Law in 2021. [ECF No. 13-13 at 9]. CITGO requests reimbursement at a rate of $312.38 per hour. [ECF No. 13-13 at 12]. Although Mr. Kelly is now a member of the New York Bar, his admission was pending when the underlying Motion to Compel was filed. [ECF No. 13-1 at 2 n.1].

Lastly, Ms. Yarelis Cabrera ("Ms. Cabrera"), is described as an "experienced paralegal" for Jones Day registered with the Florida Bar. [ECF No. 13-13 at 9]. CITGO requests reimbursement at a rate of $318.75 per hour. [*Id.* at 12]. CITGO, however, has failed to include any further information describing Ms. Cabrera's qualifications.

The Court finds that the requested hourly rates are higher than similarly qualified attorneys practicing within the Southern District of Florida. This is true even with the recent increase in hourly rates for large national law firms located (or opening offices in) South Florida. Moreover, based upon the nature of the matter involved, an uncontested Motion to Compel, and taking into account the professional biographies CITGO has submitted, CITGO's arguments, and applying the Court's own experience and knowledge, the following hourly rates are found to be reasonable for this case:

        Mr. Gottlieb: $825
        Mr. Meyer: $850
        Mr. Reddick: $750
        Mr. English: $700
        Mr. Kelly: $300
        Mr. Puente: $850
        Ms. Fudenberg: $500
        Ms. Cabrera: $175

These reductions are in line with those made by courts within this District for attorneys with similar qualifications and from national law firms of similar standing. *See, e.g., DJ Lincoln Enterprises, Inc. v. Google, LLC*, No. 20-CV-14159, 2022 WL 4287640, at *9 (S.D. Fla. July 28, 2022), *report and recommendation adopted sub nom. DJ Lincoln Enterprises, Inc. v. Google, LLC*, No. 2:20-CV-14159, 2022 WL 3754182 (S.D. Fla. Aug. 30, 2022) (awarding fees for attorneys from national law firm ranging from $760 for shareholder partner to $400 for an associate with roughly three years' experience); *Caracol TV, S.A. v. Telemundo TV Studios, LLC*, No. 18-23443-CIV, 2022 U.S. Dist. LEXIS 138908, at *7, 21–23 (S.D. Fla. Aug. 4, 2022) (recommending attorneys from Greenberg Traurig be awarded between $765 for work by a partner and $415 for an associate); *Global Digit. Solutions, Inc. v. Bolzan*, No. 18-80106-CV, 2021 U.S. Dist. LEXIS 255816, at *6–7 (S.D. Fla. Aug. 13, 2021) (reducing requested rates for attorneys from Boies Schiller Flexner LLP from $1,230, $990, $850, and $630 to $820, $660, $567, and $420, respectively).

        **C. Reasonable Number of Compensable Hours**

Next, the court must evaluate the reasonableness of the number of hours spent on this matter. *See Norman*, 836 F.2d at 1303. Compensable time includes only hours spent on the relevant federal litigation. *Loranger*, 10 F.3d 776, 782 (11th Cir. 1994) (quoting *Hensley*, 461 U.S. at 433). A movant should exercise "billing judgment" by pruning out hours considered "unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience*

12

*of counsel.*" *Barnes*, 168 F.3d at 428 (*quoting Norman*, 836 F.2d at 1301) (emphasis in original). Clerical or secretarial tasks, including "document 'preparation,' scanning, converting to PDF, attaching to emails, . . . and filing" are not compensable. *Tiramisu Intern. LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1297 (S.D. Fla. 2010).

Accordingly, any "excessive, redundant or otherwise unnecessary hours" will be deducted by the court. *Barnes*, 168 F.3d at 428 (quoting *Hensley*, 461 U.S. at 434). "Block billing," the grouping of multiple tasks in an indivisible block of time, and vague descriptions of expenditures on movant's time records are insufficient. *Odes v Harris*, No. 12-CV-61561, 2014 WL 11531573, at 5* (S.D. Fla. Jan. 6, 2014).

Here, CITGO requests a total of 79.3 compensable hours incurred in preparing the underlying Motion to Compel. [ECF No. 13-1 at 12]. The requested hours for recovery are attributed to all eight timekeepers, comprised of four partners, two associates, one law clerk, and one paralegal.

As an initial matter, CITGO requests fees beginning on December 17, 2021. *See* [ECF No. 17-1 at 14]. As CITGO admits, however, it only served PLS USA with a valid subpoena on January 18, 2022, which PLS USA was required to comply with by February 7, 2022. [ECF No. 13 at 2]. Accordingly, CITGO is requesting fees for a period of time *before* PLS USA's compliance with the valid January 18, 2022, subpoena was even due. The appropriate time period CITGO could reasonably begin requesting fees was after February 7, 2022, the date on which PLS USA was required to comply with the subpoena. Specifically, CITGO seeks fees for 52.9 hours of work done prior to the date of compliance. *See generally* [ECF No. 17-1 at 3–27, 60–65]. Consequently, the work done for these 52.9 hours is non-compensable and should not be included in any fee award. The Court, therefore, is left to determine the propriety of the remaining post-February 7, 2022,

hours. Furthermore, it should be noted that CITGO voluntarily reduced the hours sought for Mr. Kelly. CITGO self-reduced Mr. Kelly's hours from a total of 76.5 hours to 50 hours. Much of Mr. Kelly's 76.5 hours were billed before February 7, 2022, however, with only 35.7 hours coming after that date.

More importantly, this matter was not sufficiently complex to require the number of hours expended or the team of lawyers staffed to handle it. The subpoena was uncontested. After emails and telephone calls to Mr. Gonzalez were not fruitful, CITGO filed a motion to compel, which was also uncontested and, thus granted without need for a hearing. When confronted with a fees request involving a case that has been overstaffed in light of the complexity of the issues involved which results in "billing inefficiencies, it is appropriate to make an overall reduction in the fees award by adopting an across-the-board percentage reduction[,]" even where the requesting-party has implemented a self-imposed reduction. *Procaps*, 2013 WL 6238647, at *16–17. The issues involved here did not include any novel issues of law or require any specific expertise. Yet, a team of seven attorneys were enlisted to work on this relatively simple Motion to Compel, which resulted in numerous instances of duplicative rounds of revisions by a number of attorneys. This is true even though CITGO wisely and "appropriately delegated" much of the work in this case to junior attorneys or staff, who billed at much lower hourly rates compared to more senior attorneys. [ECF No. 13 at 11]. Additionally, a careful review shows entries for tasks which can be characterized as clerical as well as instances of block billing. Therefore, based on this Court's review of the billing entries, a 50% reduction for each timekeeper is appropriate here. Thus, the hours for each timekeeper for the billing entries *after* February 7, 2022, should be reduced as follows:

    Mr. Gottlieb: from 0.7 to .35 hours
    Mr. Meyer: from 0.3 to .15 hours

    Mr. Reddick: from 2.0 to 1.0 hours
    Mr. English: from 13.0 to 6.5 hours
    Mr. Kelly: 35.7 to 17.85 hours
    Mr. Puente: 1.8 to .9 hours
    Ms. Fudenberg: 7.3 to 3.65 hours
    Ms. Cabrera: 2.7 to 1.35 hours

### D. Total Fee Award

Based on the reduction in time and the reasonable hourly rates for each timekeeper, the breakdown of the total award should be as follows:

    Mr. Gottlieb: 0.35 x $825 = $288.75
    Mr. Meyer: .15 x $850 = $127.50
    Mr. Reddick: 1.0 x $750 = $750.00
    Mr. English: 6.5 x $700 = $4,550.00
    Mr. Kelly: 17.85 x $300 = $5,355.00
    Mr. Puente: .9 x $850 = $765.00
    Ms. Fudenberg: 3.65 x $500 = $1,825.00
    Ms. Cabrera: 1.35 x $175 = $236.25

Added together this amounts to a total fee award of $13,897.50.

### III. COSTS TO BE AWARDED TO CITGO

Aside from attorneys' fees, "[w]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs. . . ." *Barnes*, 168 F.3d at 438 (quoting *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983)). Here, CITGO requests reimbursement of non-attorney related fees, including $49.00 associated with filing, $400 related to Mr. Gottlieb's and Mr. Meyer's *pro hac vice* applications, and $24.74 to serve the Motion on PLS USA, totaling $473.74. All costs for which recovery is requested are reasonable. Accordingly, the Court should grant reimbursement of $473.74.

## IV. CITGO HAS FAILED TO ESTABLISH THAT PETER GONZALEZ AND/OR THE SMGQ LAW FIRM SHOULD BE RESPONSIBLE FOR ITS ATTORNEYS' FEES

CITGO requests that this Court hold "PLS USA and its counsel jointly and severally liable for CITGO's reasonable expenses pursuant to Fed. R. Civ. P. 37(a)(5)(A) and/or S.D. Fla Local Rule 7.1(a)(3) … [because] PLS USA and counsel for PLS USA have repeatedly and consistently failed to respond to discovery requested and failed to meet and confer in good faith with counsel for CITGO." [ECF No. 13 at 6].

Rule 37(a)(5)(A) provides that "[i]f the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, *or both* to pay the movant's reasonable expenses incurred." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). In addition to Rule 37(a)(5)(A) requiring non-movant be provided with an opportunity to be heard, Rule 37 sanctions must comply with the "mandates of due process, requiring fair notice and an opportunity to be heard." *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018).

CITGO has not established that Mr. Gonzalez, is in fact PLS USA's counsel. While it is clear to the Court that CITGO claims Mr. Gonzalez represents PLS USA, it is not so clear to the Court that he does. In support of its Motion to Compel and the instant Motion for Attorneys' Fees, CITGO includes long email chains with Mr. Gonzalez, in which CITGO's counsel routinely makes statements to Mr. Gonzalez such as "*[y]our client*, PLS USA …" was required to comply with the subpoena by February 7, 2022. [ECF No. 1-1 at 13] (emphasis added). Yet, nowhere in these email chains does Mr. Gonzalez ever state he represents PLS USA. Rather, Mr. Gonzalez appears to have carefully stated that he represented *PLS*, but never states that he represents *PLS USA*. *See, e.g.,* [ECF No. 1-1 at 16] (Mr. Gonzalez stating "I would be representing Javier Aurrecoechea and

16

*Petroleum Logistics Service Corp.*, and Mr. Omana as its corporate representative, if he is in fact the corporate rep…. [and] I will be representing these folks in connection with the subpoenas they received"); [*Id.* at 17] (Mr. Gonzalez's legal assistant explaining that "Mr. Gonzalez has been retained by Javier Aurrecoechea and *Petroleum Logistics Service Corp.*") (emphasis added). As such, it appears uncertain whether Mr. Gonzalez was merely assisting PLS USA in his capacity as the attorney for PLS.

Further, the ambiguity surrounding Mr. Gonzalez's relationship to PLS USA is made even murkier by the fact neither he (nor any representative of PLS USA) has made an appearance in this matter. Generally, in the cases in which fees were shifted to the attorneys or law firms, the attorneys were counsel of record. *See, e.g., Procraps*, 2013 WL 6238647, at *17–18 (finding counsel of record should be partly responsible for paying attorneys' fees related to a motion to compel); *Luciano v. Sabers*, No. 15-81385-CIV, 2016 WL 11600375, at *2 (S.D. Fla. Apr. 14, 2016) (same).

Lastly, it is not clear that Mr. Gonzalez counseled or advised PLS USA's conduct. CITGO details numerous attempts to facilitate PLS USA's compliance with its third-party discovery, including CITGO's counsel also sending numerous emails to Mr. Gonzalez attempting to coordinate such compliance. *See generally* [ECF No. 13-1 at 92–95, 110–16]; [ECF No. 1-1 at 9–18]. Nothing in these email chains, however, provide any indication Mr. Gonzalez instigated or advised PLS USA's noncompliance with the subpoena. A finding of bad faith is not a requirement for a court to exercise its discretion to require both the attorney and noncompliant party to cover the costs of procuring compliance with discovery requests. *Devaney v. Continental American Ins. Co.*, 989 F.2d 1154, 1161–62 (11th Cir. 1993). Yet, the party seeking fees must still present significant justification for a court to impose such a sanction, because doing so serves the purpose

17

of reminding an attorney that when he or she "advises a client in discovery matters, he [or she] … may be held accountable for positions taken or responses filed during that process." *Id.* at 1162. CITGO has failed to provide a factual basis sufficient to justify this Court exercising such discretion. As such, requiring Mr. Gonzalez or his firm to be responsible for attorneys' fees along with an entity it is not entirely clear he represents, is unwarranted. Consequently, PLS USA is solely responsible for the fee award.

## CONCLUSION

In accordance with the above, it is **RECOMMENDED** that CITGO's Motion for Attorneys' Fees and Costs, [ECF No. 13-13], be **GRANTED in part and DENIED in part**. The Court should order PLS USA to reimburse CITGO for $13,897.50 in attorneys' fees and $473.74 in associated costs, for a total award of $14,371.24.

Objections to this Report may be filed with the district judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 30th day of November, 2022.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Roy K. Altman;**

  **All Counsel of Record**